UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Steven J. Roy</u>

  v.          Civil No. 02-cv-555-JD
               Opinion No. 2005 DNH 131
<u>Phil Stanley, et al.</u>

<u>O R D E R</u>

Steven J. Roy, who is incarcerated at the New Hampshire
State Prison, brings civil rights claims under 42 U.S.C. § 1983
against Phil Stanley, (former) Commissioner, New Hampshire
Department of Corrections; Jane Coplan, (former) Warden, New
Hampshire State Prison; Greg Crompton, Deputy Warden; and David
O'Brien and Neal Smith, New Hampshire State Prison Investigations
Department.  Following preliminary review and approval of the
magistrate judge's report and recommendation, Roy maintains
claims of retaliation in violation of due process against
Crompton, denial of telephone access in violation of due process
against Crompton, Smith, and O'Brien, and a claim of supervisory
liability against Coplan and Stanley.  The defendants move for
summary judgment, and Roy objects.

<u>Standard of Review</u>

Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c).  The party seeking summary judgment must first demonstrate
the absence of a genuine issue of material fact in the record.
See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party
opposing a properly supported motion for summary judgment must
present competent evidence of record that shows a genuine issue
for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
256 (1986).  All reasonable inferences and all credibility issues
are resolved in favor of the nonmoving party.  See id. at 255.

Background

Before his incarceration, which began in 1993, Roy owned and
operated a company that developed and sold software for debt
collection agencies.  After he was incarcerated, the company was
reorganized through bankruptcy proceedings and is being operated
and held in trust for Roy by Attorney Paul Heller.  The company,
now known as Premier Software Systems, continues to operate, and
Roy holds a beneficial interest in the company.

The New Hampshire State Prison prohibits an inmate from
running a business during his incarceration.  Deputy Warden
Crompton states that while inmates are not permitted to work for

compensation related to a business they acquired before their incarceration, inmates are permitted to communicate with third parties outside of the prison to the extent necessary to protect the inmate's property or funds related to a legitimate business or property interest.  Roy states that after he was incarcerated he "communicated heavily" with his company by telephone until late in 1994 when the prison discovered his business activity and began to interfere with his communications.

In 1995, in the course of investigating Roy for possession of gambling materials, the prison seized some of Roy's business-related papers, including computer printouts.  The computer printouts seized were actually debt collection software that the prison mistakenly thought were related to gambling activities. Roy brought suit in this court, alleging that prison officials had violated his constitutional rights by seizing his papers. While the case was pending, the prison imposed a restriction on Roy that banned him from access to the prison's computers.  In response, Roy added a retaliation claim to his lawsuit.  The parties reached a settlement during trial.  As part of the settlement, the prison returned the computer printouts that had been seized from Roy's cell and promised not to interfere with Roy's communications with his company.  The ban on Roy's use of computers remained in place.

Warden Coplan reconsidered the computer ban in August of 2000 and decided to lift it.  Roy then took several computer courses in the prison.  In September of 2001, Roy was given a job in the prison law library helping other inmates use computers for legal research.  A few months later, in December of 2001, Roy was terminated from that work without explanation.  He was later told he was dismissed for security reasons.

Roy filed a grievance in April of 2002 asking "to be removed from the security blacklist that has prevented me from getting any meaningful job in the prison."  Pl. Ex. 1.  Deputy Warden Crompton replied that Roy was restricted from computers.  Roy explained that he had taken computer classes and worked in the library computer job without incident since the computer ban had been lifted.  Crompton replied:  "Based on prosecutor statements and incidents that you have engaged in in the past, you are restricted from computers."  Def. Ex. 10.  The statements and incidents Crompton refers to were the prison's mistaken belief in 1995, before the settlement of Roy's first lawsuit, that computer printouts in Roy's possession were related to gambling.  Roy continued to press the issue of his use of computers.  On October 17, 2002, Crompton responded that all of the issues were resolved and that "[a]ny previous restrictions are lifted."  Def. Ex. 11.  Roy immediately applied for a programming job in the

4

prison.

On October 28, 2002, a contractor conducting random monitoring of inmates' telephone conversations heard Roy talking with a customer of his former company about compensating Roy for his work.[1]  She believed the conversation showed a violation of the prohibition against running a business.  She disconnected the call and referred the matter to the prison Investigations Department.  An investigation of Roy's activities was begun.  On October 30, 2002, Supervisor O'Brien requested that the prison suspend Roy's telephone privileges while the investigation was pending.  Crompton approved O'Brien's request and added a note: "further, no access to Education or computers."  Def. Ex. 12. Roy filed this suit in December of 2002, alleging, among other things, that he had been blacklisted from prison employment and that his telephone use was unconstitutionally restricted.

In April of 2003, the prison concluded, based on the results of the investigation, that Roy had violated the prohibition against conducting a business.  A formal charge was brought against him, but because of procedural errors in processing the disciplinary report, he was found not guilty.  The prison

---

[1]Although Roy insists that the client's offer was merely charity unrelated to the business services Roy was providing, the court finds his interpretation of the conversation unpersuasive.

reinstated Roy's telephone privileges on a limited basis,
allowing communication with his family and his lawyer.  He was
allowed to access the computers in the law library but his
computer access was otherwise restricted.  Neil Smith testified
that the computer access restriction was maintained because
prison officials thought that Roy would use prison computers to
test his programming ideas for purposes of running his software
business.

Also in April of 2003, Roy applied and was hired for a
computer job in the prison's print shop.  The next day, however,
the foreman of the print shop, Steven Carleton, wrote:  "I was
just informed today that I cannot employ you."  Pl. Ex. 13.
Several days later, Richard Davis, Print Shop Manager, wrote:
"According to what we have been told you have had problems in
other places you've worked doing illegal things on computers.  We
simply cannot take a risk and also we've been told that you are
not to have any job connected to working on computers, by
administration."  Pl. Ex. 17.  Dennis Race, Director of the
Industries Program, responded to Roy's inquiry about the reasons
for the computer restrictions by stating that he had decided to
offer the job to someone else based on listed criteria and that
he had not considered any other reasons in denying Roy the job.

In June of 2003, the prison restored Roy's access to "stand

6

alone" computers.  Crompton states that Roy was hired for a job in the furniture shop in the North Yard but was then fired when he was found to have brought contraband to the North Yard. Crompton provides no dates or other evidence of that incident. Roy explains that the incident occurred in May of 2005 and characterizes his firing as an exaggerated response to a minor infraction.

Roy states that he applied for vocational education in computer assisted design in late 2003.  The computer class was held in the North Yard, and the instructor told him he could attend the class.  When he arrived for class on January 6, 2004, he was refused entry to the North Yard.  A job change form, required to change assignment to the vocational educational class, dated January 8, 2004, indicates that Roy's request was denied because of "computer issues in the past."  Pl. Ex. 29.  He then attended classes outside of the North Yard.  Roy states that on January 15, 2004, an officer mistakenly thought he was attending classes in the North Yard in violation of restrictions imposed on him, and, as a result, he was "lugged" to the Special Housing Unit.  The writeup of the incident stated that Roy had had computer issues in the past that were a security threat. Following a disciplinary hearing on January 28, 2004, the hearings officer dismissed the writeup.  Shortly thereafter, Roy

7

was approved to attend classes in the North Yard, which he did,
beginning on February 11, 2004.

Roy states in his objection to summary judgment that he
learned in July of 2004 that his ongoing problems with access to
the North Yard and in gaining and maintaining employment or
education there were due to the anger of the administration and
Dennis Race about this lawsuit.[2]  He contends that the Furniture
Shop manager hired him in July of 2004 without being aware of the
"blacklist" against him.  He further contends that the difficulty
he encountered in trying to get to the North Yard on his first
day of work and his subsequent termination were due to the
effects of the "blacklist."  He also states that prison staff
continue to believe that he cannot be given computer access
because of some past illegal activities on computers.  Roy
describes continued problems with access to the North Yard and in
maintaining employment there.

In the meantime, Roy's lawsuit proceeded in this court.  He
sought a preliminary injunction to require the prison to lift the
telephone and computer restrictions on him, challenging the
prison's determination that he was running a business in
violation of prison rules.  The magistrate judge held a hearing

---

[2]Roy has not alleged a claim of retaliation against him for
exercising his First Amendment right of access to the courts.

on January 10, 2003, with testimony from Roy and defendants
Crompton and Smith.  The magistrate recommended that injunctive
relief be denied because Roy had not shown that he was likely to
succeed on the merits of his claims as telephone recordings cast
doubt on Roy's claim that he was not seeking payment for his
services.  The court approved the magistrate judge's
recommendation.

Roy filed an amended complaint on May 1, 2003, and then
filed a motion for injunctive relief, contending new evidence
existed to support his claims.  The magistrate judge again found
a lack of evidence to support Roy's claim that the telephone
restrictions burdened his constitutionally-protected activities.
With respect to the computer access ban, however, the magistrate
found that evidence existed to support Roy's retaliation claim.
In particular, the magistrate concluded that Richard Davis's
testimony that Dennis Race told the shop supervisors not to hire
Roy because of prior problems with computers was credible, while
Race's testimony to the contrary was not credible.  The
magistrate also found that Crompton's testimony was not entirely
candid.[3]

_____

[3]After reviewing the testimony of those witnesses, the court
agrees with and adopts the magistrate's assessment of the
testimony of Dennis Race and Gregory Crompton.

After hearing all of the testimony, the magistrate concluded that, despite Crompton's testimony to the contrary, prison officials had banned Roy from using computers.  The magistrate judge also concluded, however, that the defendants had stated legitimate, non-retaliatory reasons for denying Roy access to computers.  He recommended that injunctive relief be denied, and the court approved that recommendation.  Roy's computer access continues to be limited to "stand alone" computers that lack Internet connection, and his telephone use is restricted to communication with his family and his lawyer.

## Discussion

Following the magistrate judge's review of Roy's amended complaint and the court's approval of the recommendation that only certain claims be served on the defendants, Roy brings three claims against the defendants.  In his first claim, he alleges that Deputy Warden Crompton retaliated against him in violation of due process by banning him from computer and telephone access based on his possession of debt collection software, which the prison had agreed he was entitled to have as part of the settlement of his first lawsuit.  Second, Roy alleges that Crompton and Officers O'Brien and Smith are violating his right to protect his business interests by restricting him from

telephone access to his former company.  Third, he alleges that
Coplan and Stanley are liable for the constitutional violations
of the other defendants because of their actions or inaction as
supervisors.  The defendants dispute Roy's claims and assert
qualified immunity.


A.  Retaliation

    Crompton contends that he did not retaliate against Roy by
restricting his access to prison computers and limiting his
telephone communications.  "A prisoner alleging retaliation must
show (1) constitutionally protected conduct, (2) an adverse
action by prison officials sufficient to deter a person of
ordinary firmness from exercising his constitutional rights, and
(3) a causal link between the exercise of his constitutional
rights and the adverse action taken against him."  Mitchell v.
Horn, 318 F.3d 523, 530 (3d Cir. 2003).  If the prisoner proves
the three elements of retaliation, the defendants may avoid
liability by showing that they would have taken the same action
even in the absence of the prisoner's protected conduct.  Centro
Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 10
(1st Cir. 2005); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir.
2003).

1.  Computer ban.

Roy's constitutionally protected conduct was his possession
of computer printouts, which were copies of debt collection
software related to Roy's business.  In the settlement of Roy's
1995 suit, the prison agreed that Roy was constitutionally
entitled to have the printouts in his possession.  Since December
of 2001, Crompton has banned Roy from using computers or being in
the vicinity of computers based on the prison's original
disciplinary report, which mistakenly concluded that the
printouts were related to gambling activities.

Crompton did not know of the settlement of Roy's 1995
lawsuit in which the prison agreed that the printouts were not
contraband and agreed that Roy was entitled to have the
printouts.  Instead, Crompton based his actions on the result of
the disciplinary proceeding that mistakenly found the printouts
were related to gambling.  Because Crompton's decision to ban Roy
from computers was based on a mistake, there is no causal link
between Crompton's adverse action and Roy's protected conduct.

Alternatively, even if the record supported Roy's
retaliation claim, Crompton would be entitled to qualified
immunity.  "Qualified immunity 'protects public officials from
civil liability insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a

12

reasonable person would have known.'" <u>Surprenant v. Rivas</u>,
2005 WL 2178884, at *6 (1st Cir. Sept. 9, 2005) (quoting <u>Cox v.
Hainey</u>, 391 F.3d 25, 29 (1st Cir. 2004)).  The First Circuit
evaluates qualified immunity in three stages.  <u>Torres-Rivera v.
Calderon-Serra</u>, 412 F.3d 205, 214 (1st Cir. 2005).  First, for
purposes of summary judgment, the court must determine whether
the facts as alleged and taken in the light most favorable to the
plaintiff "show the officer's conduct violated a constitutional
right."  <u>Torres-Rivera v. O'Neill-Cancel</u>, 406 F.3d 43, 53 (1st
Cir. 2005).  If so, the court next considers whether the
constitutional right asserted was clearly established at the time
of the alleged violation "such that a reasonable officer would be
on notice that his conduct was unlawful."  <u>Id.</u> at 54 (internal
quotation marks omitted).  If the asserted constitutional right
was clearly established, the court then decides "whether a
reasonable officer, similarly situated, would understand that the
challenged conduct violated the clearly established right at
issue."[4]  <u>Id.</u> (internal quotation marks omitted).

Based on the magistrate's preliminary review in this case,
Roy alleged a claim of unconstitutional retaliation.   The

---

[4]The second and third stages are sometimes considered
together.  <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001); <u>Burke
v. Town of Walpole</u>, 405 F.3d 66, 77 n.12 (1st Cir. 2005).

constitutional right Roy asserts, the right not to be subjected
to adverse action in retaliation for constitutionally protected
conduct, in that general sense, was clearly established in 2001
when Crompton first imposed the computer ban.  See, e.g., Collins
v. Nuzzo, 244 F.3d 246, 251-52 (1st Cir. 2001).  In a more
particular sense, however, a prisoner's right not to be subjected
to retaliation for possession of property that the prison has
agreed under a settlement of a prior lawsuit he is constitu-
tionally entitled to have, is, at best, an obscure legal concept.
Even the law governing a prisoner's right to protect legitimate
property interests was far from clearly established at that time.
See King v. Fed. Bur. of Prisons, 415 F.3d 634, 636-37 (7th Cir.
2005); Rauso v. Vaughn, 2000 WL 873285, at *14 (E.D. Pa. June 26,
2000).

     At the third stage, the analysis turns from "abstract
principles to the specific facts of a given case."  Burke v. Town
of Walpole, 405 F.3d 66, 86 (1st Cir. 2005).  The court examines
the defendant's conduct in light of the circumstances that
confronted him to determine "whether it would be clear to a
reasonable [prison official] that his conduct was unlawful in the
situation he confronted."  Groh v. Ramirez, 540 U.S. 551, 563
(2004) (internal quotation marks omitted).  "[T]he doctrine of
qualified immunity provides a safe harbor for a wide range of

mistaken judgments."  <u>Hatch v. Dep't for Children, Youth & Their Families</u>, 274 F.3d 12, 19 (1st Cir. 2001).  "An officer is entitled to qualified immunity when his conduct is objectively reasonable based on the information available at the time and in light of clearly established law."  <u>Pena-Borrero v. Estremeda</u>, 365 F.3d 7, 14 (1st Cir. 2004).

Crompton's imposition of the computer ban was based on his mistaken belief that Roy had engaged in illegal computer activities in the past, demonstrated by his possession of the computer printouts that the prison mistakenly thought were related to gambling.  For reasons that remain unexplained, Crompton did not know that the 1995 lawsuit had exonerated Roy of illegal computer activities and that prison officials had agreed that Roy was entitled to possess the printouts.  Crompton's conduct in imposing the ban based on his mistaken belief is objectively reasonable.  It would not be objectively reasonable, however, for Crompton or anyone else at the prison to continue to ban Roy's use of computers based on that mistaken belief.

### 2.  Telephone use.

Roy's telephone use has been restricted to communications with his family and his lawyer since October of 2002 when monitoring revealed that he was conducting his business for

profit over the telephone.  Inmates have no constitutional right
to conduct business in prison.  <u>French v. Butterworth</u>, 614 F.2d
23, 24-25 (1st Cir. 1980).  The New Hampshire State Prison
prohibits inmates from engaging in business activities.  The
telephone restriction was imposed on Roy based on a perceived
violation of that rule.  Therefore, Crompton did not impose that
limitation in retaliation for any constitutionally protected
conduct.

B.  <u>Violation of Right to Protect Business Interests</u>

     Roy contends that Crompton, O'Brien, and Smith, by
preventing his telephone communication with his company, are
depriving him of his right to preserve his beneficial interests
of the due process clause of the Fourteenth Amendment.  Prisoners
do not have a constitutional right to use the telephone.  <u>United
States v. Footman</u>, 215 F.3d 145, 155 (1st Cir. 2000).  As noted
above, inmates have no constitutional right to operate or
maintain a business from prison.  <u>French</u>, 614 F.2d at 24-25.
Inmates, however, may retain protected property interests in
assets that were legitimately acquired prior to their
incarceration.  <u>See</u> <u>King</u>, 415 F.3d at 637.  States also may
create certain liberty interests for inmates that are protected
by the due process clause, "[b]ut these interests will be

generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

To the extent Roy argues that he has a protected property right in his business, he has not shown that the telephone restriction has deprived him of that property.  He has not shown that the prison has prevented all communication with his company.[5]  Cf. King, 415 F.3d at 638 (noting complaint alleged prison denied plaintiff's right to contact his broker).  Further, given Roy's appointment of an attorney to run his company through a constructive trust, he has not shown that the restriction on his telephone use has harmed his company to the extent of causing a deprivation of property.  See id. at 637–38.  Further, the security issues pertaining to Roy's business activities, identified by the defendants, justify the restrictions imposed on his telephone use.  See id. at 638.

---

[5]Although he states in his affidavit that his mailed communications to the company have not been answered and that his certified mail "has vanished," he has not shown that the prison has imposed any restrictions on his mail.  He surmises that the prison has discarded his mail to his company.  Because the prison prohibits inmates from running businesses, Roy's mail may have run afoul of that regulation.  Should problems with mail continue, Roy would be well advised to address the problem through the prison grievance process to ascertain whether his mail to his company has been intercepted and, if so, why.

Roy contends that the state created a liberty interest by allowing him to communicate freely with his company and clients over eight years and by promising not to interfere in his communications with his company as part of the settlement of the 1995 lawsuit.  Roy would be entitled to due process protection, based on the asserted liberty interest in unfettered telephone communication with his company, only if the current telephone restriction "imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484.

Prisons legitimately impose a variety of restrictions on inmates' use of telephones.  See, e.g., United States v. Lewis, 406 F.3d 11, 13 (1st Cir. 2005); Gilday v. Dubois, 124 F.3d 277, 293 (1st Cir. 1997); Spurlock v. Simmons, 88 F. Supp. 2d 1189, 1193 (D. Kan. 2000).  The New Hampshire State Prison also prohibits all inmates from running businesses.  Nothing in the record suggests that a triable issue remains as to whether the restriction on Roy's telephone use is so atypical that it violates due process.

C.  <u>Supervisory Liability</u>[6]

Supervisors are liable under § 1983 for the unconstitutional conduct of their subordinates when their "action or inaction is affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." <u>Wilson v. Town of Mendon</u>, 294 F.3d 1, 6 (1st Cir. 2002) (internal quotation marks omitted).  "To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." <u>Figueroa-Torres v. Toledo-Davila</u>, 232 F.3d 270, 279 (1st Cir. 2000).  Further, the plaintiff must show that the supervisor's deliberate indifference was causally related to the resulting harm.  <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41, 44 (1st Cir. 1999).  A supervisor can be liable only if the subordinate violated the plaintiff's constitutional right. <u>Wilson</u>, 294 F.3d at 6.

The court has concluded that the record does not support a

---

[6]In his objection, Roy also asserts an official capacity claim against Defendants Stanley and Coplan.  That claim was not alleged in the amended complaint, although he identified those parties as being sued in their individual and official capacities, and was not allowed in the magistrate's report and recommendation.  Therefore, it is not considered here.

triable issue as to whether the subordinate defendants, Crompton, O'Brien, and Smith, violated Roy's constitutional rights as he alleges.  In the absence of constitutional violations, there is no basis for supervisory liability.  Further, even if either of the alleged violations had occurred, Roy has not shown the necessary connection between Coplan or Stanley and the subordinate's alleged violations.[7]

Despite the lack of a basis for supervisory liability, the court is concerned about the shoddy prison supervision and management this case has revealed.  Two prison employees provided testimony in this case that was not candid or credible, apparently without being held accountable by their supervisors. Further, the entire issue of the computer ban arises from a mistake that could easily have been prevented if prison supervisors had communicated with their successors and subordinates about the settlement of Roy's first lawsuit.  Prison management and discipline should not be based on mistaken assumptions, unfounded rumors, and gossip.  To avoid continued problems arising from the circumstances of this case, the prison is put on notice that it must correct the disciplinary report on Roy pertaining to his possession of computer printouts that were

---

[7]Although Roy documents that he sent grievances to Coplan and Stanley, the responses he received were from Crompton, rather than Coplan or Stanley.

mistaken for gambling activity and inform all prison staff of that correction and the prison's obligations under the settlement of Roy's first lawsuit.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for summary judgment (document no. 97) is granted.  The defendants' motion for leave to file corrections (document no. 110) is granted.  The plaintiff's motion for sanctions (document no. 112) is denied.  The defendants' motion to strike (document no. 115) is terminated.  The plaintiff's motion for leave (document no. 120) is granted.  A copy of this order shall be sent to Stephen J. Curry, Commissioner, New Hampshire Department of Corrections, P.O. Box 1806, Concord, N.H. 03302-1806, and Bruce W. Cattell, Warden, New Hampshire State Prison for Men, P.O. Box 14, Concord, N.H. 03301-0014.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

September 20, 2005
cc:  Steven J. Roy, pro se
     Mary E. Maloney, Esquire
     Stephen J. Curry, Commissioner, NH DOC
     Bruce W. Cattell, Warden, NHSP